UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| TERESA J. HOCKEY, individually | ) | CASE NO. 1:25CV89 |
| and on behalf of all individuals | ) | JUDGE CHRISTOPHER A. BOYKO |
| similarly situated, | ) | |
| Plaintiffs, | ) | |
| -vs- | ) | OPINION AND ORDER |
| | ) | |
| SEAFOOD SHAKE BOIL | ) | |
| STRONGSVILLE, INC., et al., | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #23) of Plaintiffs for Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b).  For the following reasons, Plaintiffs' Motion is granted in part.

## I. BACKGROUND

Plaintiff Teresa J. Hockey and other similarly-situated Potential Opt-In Plaintiffs are current and former tipped employees at the Strongsville, Ohio location of the Seafood Shake Boil restaurant owned by Defendant Jun Zhang and Defendant Hangchun Zheng.  Plaintiffs allege that Defendants paid them less than the statutory minimum wage and minimum overtime wage; required Plaintiffs to participate in illegal tip pooling arrangements; and improperly utilized the tip-credit provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, to satisfy their minimum wage obligations.

This lawsuit was commenced on January 17, 2025.  Plaintiffs filed their First Amended Complaint on August 15, 2025, alleging violations of the FLSA; the Ohio Minimum Fair Wage Standards Act, O.R.C. §4111 *et seq*. (the"Ohio Wage Act"); the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15; O.R.C. § 2307.60; and Retaliation under the FLSA.  Defendants answered on September 29, 2025.

The Court entered a case management schedule allowing for a bifurcated discovery plan and ordered Plaintiffs to file their motion for issuance of court-supervised notice by September 12, 2025, Defendants' opposition briefs by October 14, 2025 and any reply briefs by October 28, 2025.  Plaintiffs filed the instant Motion on September 10, 2025.  Defendants have filed no opposition nor any request for extension of the filing deadlines.

## II. LAW AND ANALYSIS

The FLSA "enshrines rights to a minimum wage and overtime pay, 29 U.S.C. §§ 206-07, and empowers workers to enforce these rights through litigation as a collective, *id.* § 216(b)," providing "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

"To the extent practicable ... court-approved notice of the suit should be sent only to employees who are in fact similarly situated." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023).  "[F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011.  This "strong likelihood" standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.*  Plaintiffs are similarly situated where their claims are

"unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 403 (6th Cir. 2017) (citation omitted).  Multiple factors guide this determination, including whether the potential opt-in plaintiffs "performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010.

Plaintiffs provide evidence in the form of declarations, depositions and exhibits which support the "strong likelihood" that the potential opt-in plaintiffs are similarly situated to the named Plaintiffs and are entitled to notice of this FLSA lawsuit.  (See, *e.g.*, Ex. A - Declaration of Plaintiff Hockey; Ex. B - Declaration of Megan Jarstfer; Ex. C - Declaration of Xavier Panteloukas; Ex. D - Declaration of Joni Green; Ex. E - Declaration of Che Pitts; Ex. F - Declaration of Brittany Kelly; Ex. G - Declaration of Michael Morscher; and Ex. H - Declaration of Cameron Marxen).  At this juncture, the Court does not weigh the merits of the claims, resolve factual disputes nor decide substantive issues.  Rather, the Court's obligation is to determine whether collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Clark*, 68 F.4th at 1012, quoting *Hoffmann-La Roche*, 493 U.S. at 170.

Non-exempt hourly servers at Defendants' seafood restaurant have been compensated at a sub-minimum hourly wage supplemented by customers' tips.  ("I and the other tipped employees are paid a sub-minimum hourly wage for all hours worked." Hockey Declaration Ex. A; see additionally, Exhibits B-H, ¶ 3).

Pursuant to the FLSA, employers may utilize the tips the employee receives as a credit

against the employer's obligation to pay minimum wages.  29 U.S.C. § 203(m).  However, in order to claim the tip credit, an employer must inform the employees of the intent to treat their tips in this manner.  Plaintiffs declare that they were never informed in writing or otherwise of Defendants' tip credit policy.  (See Exhibits A-H, ¶ 4).

The pooling of tips among employees who customarily and regularly receive tips is not prohibited by 29 U.S.C. § 203(m).  However, "an employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  *Id*.  Plaintiffs offer evidence that managers and other non-tipped staff at Defendants' restaurant received part of their tips contributed to the tip pool.  (Ex. A, ¶ 13; Ex. B, ¶ 12; Ex. C, ¶ 10; Ex. D, ¶ 12; Ex. E, ¶ 14; Ex. F, ¶ 14; Ex. G, ¶ 13; and Ex. H, ¶ 13).

Defendants required Plaintiffs to perform non-tipped work related to tipped work before, after and during their shifts that exceeded 20% of their time.  For instance, Plaintiffs were required to set tables with forks, wet naps, gloves, napkins and bibs; peel hard-boiled eggs or cut fruit; re-fill salt and pepper shakers and sauce; set up and stock the coffee/tea station and the bar.  (Ex. A, ¶ 9; Ex. B, ¶ 8; Ex. C, ¶ 6; Ex. D, ¶ 8; Ex. E, ¶ 10; Ex. F, ¶ 10; Ex. G, ¶ 9; and Ex. H, ¶ 9).

Defendants required Plaintiffs to perform non-tipped work unrelated to their jobs as servers while being paid less than the statutory minimum wage.  For example, Plaintiffs had to do janitorial work, sweep, mop, clean restrooms and take out the trash.  (Ex. A, ¶ 10; Ex. B, ¶ 9; Ex. C, ¶ 7; Ex. D, ¶ 9; Ex. E, ¶ 11; Ex. F, ¶ 11; Ex. G, ¶ 10; and Ex. H, ¶ 10).

Defendants' expectation as set forth in company policy is that Plaintiff-employees should

arrive at least 15 to 20 minutes before their shift; but employees should not clock in until their

shift begins.  (Handbook of Seafood Shake, ECF DKT #19-6).

Because Defendants have not filed their opposition brief, there is no dispute about

Plaintiffs' representations and there is no countervailing evidence regarding whether potential

opt-ins are similarly situated to Named Plaintiffs.

### III. CONCLUSION

In accordance with the *Clark* guidance, the Court is satisfied that Plaintiffs have shown a

"strong likelihood" that the potential opt-in employees are similarly situated to Plaintiffs

themselves.

The Court orders as follows:

(1) Court-Supervised Notice is granted, provided the Proposed Notice (ECF DKT #23-9)

is amended to reflect the proper dates and current number of consents filed.  The Notice shall

issue to current and former hourly tipped employees who worked at Defendants' Strongsville,

Ohio location at any time within three years preceding the date of this Opinion and Order;

(2) The Notice and Consent Form may be sent to potential opt-ins by regular U.S. Mail

and email.  This will ensure that putative plaintiffs will receive notice of the suit by at least

one method, and will eliminate any concerns regarding inaccurate residential addresses or delays

in mail service.

(3) Consent Forms shall be returned 60 days from the date the Notices are mailed;

(4) Within 14 days of the Court's Order, Defendants shall provide to Plaintiffs a list of

the names, addresses and email addresses of the defined opt-in plaintiffs in electronic and

importable format;

(5) The Notice and Consent Form shall be posted in plain view at Defendants' Strongsville, Ohio location.

Therefore, the Motion (ECF DKT #23) of Plaintiffs for Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) is granted in part.  Plaintiffs' Motion (ECF DKT #32) for Telephonic Status Conference is denied as moot.


**IT IS SO ORDERED.**

**DATE: 3/16/2026**               s/Christopher A. Boyko
                                  **JUDGE CHRISTOPHER A. BOYKO**
                                  **UNITED STATES DISTRICT COURT**