**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERESA J. HOCKEY, individually and on behalf of all individuals similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SEAFOOD SHAKE BOIL STRONGSVILLE, INC., et al.,<br><br>Defendants. | ) | CASE NO. 1:25-cv-00089-MJH<br><br>JUDGE MICHAEL J. HENDERSHOT<br><br>MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter is before me on the motion of Plaintiff Teresa J. Hockey, on behalf of herself and all other similarly situated ("Plaintiffs"), for spoliation sanctions against Defendants Seafood Shake Boil Strongsville, Inc. ("Seafood Shake"), Jun Zhang, and Hangchun Zheng (collectively, "Defendants"). Plaintiffs assert that Defendants failed to preserve electronic WeChat messages with their accountant that are highly relevant to the lawsuit. Plaintiffs seek an adverse inference and other sanctions under Federal Rules of Civil Procedure 37(b) and 37(e) and the Court's inherent authority. On September 22, 2026, the Court referred this matter to me for disposition. (ECF No. 58).[1]

For the reasons set forth below, Plaintiffs' motion is GRANTED IN PART and

[1] 28 U.S.C. § 636 provides that a district judge may designate a magistrate judge to determine any pretrial matter other than certain enumerated exceptions, including motions for injunctive relief, motions to dismiss, motions for judgment on the pleadings, and motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(A). Likewise, Federal Rule of Civil Procedure 72(a) provides that a magistrate judge may issue a decision when a referred matter "is not dispositive of a party's claim or defense . . . ." Fed. R. Civ. P. 72(a). Motions for sanctions are not included in the list of matters that a magistrate judge may not decide, and Plaintiffs do not seek dispositive relief. Accordingly, I am issuing a ruling on Plaintiffs' motion rather than a report and recommendation. *See Westley v. Harris*, No. 4:21-CV-01672, 2025 WL 3492127, at *1 n.1 (N.D. Ohio Dec. 5, 2025)

DENIED IN PART. Plaintiffs' motion for an adverse inference is denied. However, I find that Defendants failed to preserve relevant information while under a duty to do so, and that Defendants' failure has prejudiced Plaintiffs. Accordingly, Defendants are ordered to produce additional payroll and timekeeping documents as set forth below within 14 days of the date of this Order. In addition, Defendants shall pay Plaintiffs' fees and costs in pursuing the information that Defendants failed to preserve and in litigating the motion for sanctions. Plaintiffs shall file an amended fee request within seven (7) days of the date of this Order.

## I. BACKGROUND

On January 17, 2025, Ms. Hockey filed suit on behalf of herself and other similarly situated individuals, alleging that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*., and the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01, *et seq*. Specifically, Plaintiffs – all of whom are current or former servers at Seafood Shake – allege that Defendants deducted set percentages of their daily tip payouts and paid those amounts to bartenders, boba tea preparers, and the house. Plaintiffs further allege that the deductions constituted a mandatory tip pool that included employees who could not lawfully participate in the pool under the FLSA.

Before Ms. Hockey filed suit, her counsel sent Defendants a litigation hold notice on December 11, 2024, which alerted them to the possibility of litigation and instructed them to preserve documents and information that may be relevant to the suit, including electronically stored information ("ESI"). (ECF No. 42-5). Defendants have acknowledged receiving the litigation hold notice, but it does not appear that they took any specific steps to implement it.

During discovery, Plaintiffs took the deposition of Seafood Shake's 30(b)(6) representative, Ying Lin. (ECF No. 42-1). Ms. Lin testified that she transcribed weekly payroll by hand, photographed those records within the WeChat messaging application, and

then sent the photographs to Seafood Shake's accountants, Central Ohio Tax Company ("COT"). *Id*. at 18:8-22:5. That practice continued after Defendants received Plaintiffs' litigation hold notice and through at least December 2, 2025, the date of Ms. Lin's deposition. *Id*. at 22:2-5. Ms. Lin also testified that she did not download or archive those photos, did not know how long WeChat retained those records, and did not know if they had been preserved. *Id*. at 19:8-17; 23:8-19. Defendants do not contend that they still possess those WeChat messages. Nor have they asserted that COT is still in possession of them.

On July 22, 2026, Plaintiff filed a motion for sanctions against all Defendants, arguing that Defendants had engaged in intentional spoliation by failing to preserve the WeChat messages even after receiving the December 11, 2024 litigation hold. (ECF No. 43). On July 23, 2026, the Court referred the matter to me for a ruling. (ECF No. 44). That same day, I ordered the parties to brief Plaintiff's motion. (Non-document Order dated July 23, 2026.)

In their response, Defendants acknowledged that the WeChat messages with COT were apparently lost, but they asserted that the payroll information in those messages could be recreated from data on Defendants' computer system. (ECF No. 51). After reviewing the parties' briefing, I ordered Defendants to file a supplemental brief by September 8, 2026 addressing five questions: (1) whether Defendants acknowledged receiving the litigation hold on December 11, 2024; (2) what steps Defendants took to preserve documents after receiving the litigation hold; (3) whether Defendants sent daily shift tip reports or other documents containing tip information to COT through WeChat; (4) if so, whether those messages were preserved; and (5) the nature of the data contained on Defendants' system that they contend could recreate the information they allegedly conveyed to COT through WeChat. (ECF No. 53).

Defendants did not comply with my order to file a supplemental brief by September 8, 2026. I therefore issued an order on September 11, 2026 that instructed Defendants to file a supplemental brief by September 15, 2026 or face potential sanctions. (*See* ECF non-document entry dated September 11, 2026).

On September 15, 2026, Defendants filed their supplemental brief. (ECF No. 55). Plaintiffs filed a supplemental reply on September 16, 2026. (ECF No. 57).[2]

## II. <u>ANALYSIS</u>

Federal Rule of Civil Procedure 37(e) provides that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court may impose sanctions. Fed. R. Civ. P. 37(e). If the court finds that another party was prejudiced by the loss of information, a court may impose measures "no greater than necessary" to cure the prejudice. Fed. R. Civ. P. 37(e)(1). Additionally, a court may grant an adverse inference, dismiss the action, or enter a default judgment "only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation . . . . " Fed. R. Civ. P. 37(e)(2). As the moving party, Plaintiffs bear the burden of showing that sanctions are warranted. *Buddenberg v. Estate of Weisdack*, 711 F. Supp. 3d 712, 817 (N.D. Ohio 2024) (citing *Courser v. Michigan House of Representatives*, 831 F. App'x 161, 188 (6th Cir. 2020)).

Courts may also draw authority to impose sanctions from other sources. Plaintiffs cite to Rule 37(b), which says that a court may impose sanctions if a party fails to obey a court

[2] On September 8, 2026, this case was reassigned from District Judge Christopher A. Boyko to District Judge Michael J. Hendershot. On September 22, 2026, Judge Hendershot re-referred Plaintiffs' motion to me for disposition. (ECF No. 58).

order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2). As another court in this district held, however, "the failure to obey a discovery order . . . presents a narrower and more limited issue that is a subset of the Rule 37(e) motion . . . ." *Buddenberg*, 711 F. Supp. 3d at 817. Moreover, "a basic rule of statutory interpretation is that the specific controls the general," and Rule 37(e) directly addresses a party's failure to preserve ESI. *Id*.

Plaintiffs further argue that the Court has inherent authority to sanction Plaintiffs. But the revised Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37(e), 2015 Advisory Comm. Note. As a result, I will focus my analysis on sanctions under Rule 37(e), rather than Rule 37(b) or a court's inherent authority to sanction misconduct.

**A. Sanctions Under Rule 37(e)(2)**

Plaintiffs primarily seek an adverse inference under Rule 37(e)(2) that: (1) the missing WeChat messages would have confirmed Defendants deducted percentages from Plaintiffs' daily tips and paid those amounts to bartenders, boba tea preparers, and the house; (2) the missing record would have confirmed that Defendants did not pay Plaintiffs a minimum wage for all hours worked in weeks where the deductions reduced their hourly rate below $7.25 an hour; (3) the WeChat messages would have shown that the figures for all opt-in plaintiffs were consistent with the daily tip-out amounts, hours worked, and sales figures for Ms. Hockey and with the opt-in plaintiffs' testimony; and (4) Defendants intentionally failed to retain the records so as to deprive Plaintiffs of evidence supporting their claims.

As noted above, a court may grant an adverse inference under Rule 37(e)(2) only if the court finds that the party acted with intent to deprive another party of the information's use in litigation. Fed. R. Civ. P. 37(e)(2); *see also Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) ("A showing of negligence or even gross negligence will not do the

trick"). "Human error is not the Rule 37(e)(2) standard. Intent is." *Jones v. Dick's Sporting Goods, Inc*., No. 1:24-CV-00619, 2025 WL 2045618, at *7 (N.D. Ohio July 22, 2025), *report and recommendation adopted*, 2025 WL 2243978 (N.D. Ohio Aug. 6, 2025). However, a court may infer intent from a party's actions. *Drips Holdings, LLC v. Teledrip, LLC*, No. 5:19-cv-2789, 2022 WL 4545233, at *3 (N.D. Ohio Sept. 29, 2022).

If a party acted with the requisite intent, Rule 37(e)(2) does not require a showing of prejudice before a court may impose an adverse inference. Fed. R. Civ. P. 37(e), 2015 Advisory Comm. Note. Nonetheless, the Advisory Committee Notes to the 2015 amendments state that a court should "exercise caution" before using Rule 37(e)(2) sanctions, and that a court is not required to do so even after determining that a party intended to deprive another party of information. *Id*.

Plaintiffs argue that I can infer intent from the record as a whole. Specifically, Plaintiffs argue that Defendants acted with intent because they knew the WeChat messages were relevant, failed to implement a litigation hold even after receiving a preservation letter, did not comply with other court orders regarding discovery, and allegedly concealed the fact that they used WeChat to communicate with COT. Defendants analogize this case to *Beaven v. United States Department of Justice*, 622 F.3d 540 (6th Cir. 2010), a case pre-dating the 2015 amendments to Rule 37(e). There, the Sixth Circuit affirmed the district court's imposition of an adverse inference after defendants intentionally destroyed a folder that was crucial to the case. *Id*. at 555.

Plaintiffs' reliance on *Beaven* is unavailing for two reasons. First, while the *Beaven* court applied a "culpable state of mind" standard, it held that culpability could be established either though knowing or negligent conduct. *Id*. at 553-54 (quoting *Residential Funding Corp.*

*v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)). *Beaven*'s apparent holding that negligent conduct could support an adverse inference no longer applies in the ESI context following the 2015 amendments to Rule 37(e). Second, the defendants in *Beaven* intentionally destroyed the folder at issue. *Id*. at 546 ("Thoms instructed Murchie to destroy the folder when he was moving to D.C.").

Here, by contrast, there is no indication that Defendants affirmatively deleted the missing WeChat messages. Instead, as Plaintiffs themselves aptly state, Defendants "continued using WeChat to transmit payroll information for nearly a year after the duty arose, while leaving the relevant transmissions inside an application of admittedly uncertain retention and without exporting, archiving, or downloading them." (ECF No. 57, PageID # 1095).

I have little trouble concluding that Defendants' conduct was grossly negligent, and they are accordingly subject to sanctions, as discussed below. However, the fact that Defendants lost relevant ESI by failing to preserve it—rather than by affirmatively deleting it—distinguishes this case from several others in this district that have found that a party acted with intent. *See Buddenberg*, 711 F. Supp. 3d at 822 (holding that plaintiff acted with intent to deprive where she actively deleted some text messages and altered the content of others); *Capital Senior Living, Inc. v. Barnhiser*, 713 F. Supp. 3d 407, 419 (N.D. Ohio 2024) (imposing adverse inference where individual "deleted the text messages herself; and not through an automated process where she may (or may not) have been ignorant of what was happening"); *Drips Holdings,* 2022 WL 4545233, at *3 (holding that defendants acted with intent to deprive where they changed Slack message retention settings from an indefinite to a seven-day retention period and deleted earlier messages after becoming aware of litigation).

Instead, this case is more analogous to others in this district that have declined to find intent where a party failed to suspend automated deletion protocols or otherwise failed to take appropriate steps to preserve relevant ESI. *See Kean v. Brinker Int'l, Inc.*, 140 F.4th 759, 772 (6th Cir. 2025) (holding that district court did not abuse discretion in finding that party was grossly negligent, rather than acted with intent to deprive, where party failed to preserve documents, did not maintain records retention policy, and did not timely institute litigation hold); *Jones*, 2025 WL 2045618, at *7 (holding that adverse inference was inappropriate where there was no evidence establishing that party intentionally deleted photographs or acted with intent to deprive); *Larrick v. Tuscarawas County*, No. 5:21-cv-00959, 2023 WL 6311396, at *19-20 (N.D. Ohio Sept. 28, 2023) (declining to impose adverse inference where party lost video without any explanation but available evidence was insufficient to establish that party intended to deprive plaintiff of evidence).

Plaintiffs have shown that Defendants were grossly negligent in failing to preserve their WeChat messages with COT. However, even when considering the circumstances as a whole, I do not find that Defendants acted with intent to deprive Plaintiffs of information. Plaintiffs' request for an adverse inference under Rule 37(e)(2) is denied.

### B. <u>Sanctions Under Rule 37(e)(1)</u>

Plaintiffs alternatively ask me to impose lesser sanctions under Rule 37(e)(1). As noted above, Rule 37(e)(1) sanctions are available where: (1) a party had a duty to preserve evidence at the time it was lost; (2) the party failed to take reasonable steps to preserve that evidence; (3) the evidence cannot be restored or replaced through additional discovery; and (4) the moving party suffered prejudice. Fed. R. Civ. P. 37(e)(1). Each factor is satisfied here.

#### *1. Duty to Preserve*

The first factor is whether Defendants had a duty to preserve the WeChat messages.

"In the Sixth Circuit, 'a party to civil litigation has a duty to preserve relevant information, including ESI, when that party has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *Westley*, 2025 WL 3492127, at *6 (quoting *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008)). Here, Plaintiffs argue that Defendants' duty to preserve arose on December 11, 2024, when they sent Defendants a litigation hold notice. In their supplemental brief, Defendants concede that they received the litigation hold and "do not ask this Court to find that any duty to preserve arose later than that date." (ECF No. 55, PageID # 1067). Accordingly, I find that Defendants' duty to preserve began on December 11, 2024.

***2. Reasonableness of Defendants' Preservation Efforts***

The second factor is whether Defendants failed to take reasonable steps to preserve the WeChat messages with COT after December 11, 2024. In assessing the reasonableness of a party's preservation efforts, "[t]he court should be sensitive to the party's sophistication with regard to litigation" as "some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation." Fed. R. Civ. P. 37(e), 2015 Advisory Comm. Note.

It is undisputed that Defendants continued to send messages to COT containing information relevant to this litigation through WeChat after December 11, 2024. Defendants apparently did so without taking any steps to ensure that those messages were preserved for use in this litigation. Defendants did not implement any protocols after receiving the litigation hold. Defendants also concede that they did not save the WeChat messages on their phones or other devices outside of the WeChat application. Nor do Defendants contend that they kept the underlying paper documents that they photographed to send to COT.

I am cognizant that the individual Defendants may have been less sophisticated with

respect to their preservation obligations, although Plaintiffs point out that Defendants have been involved in another FLSA suit and arguably should have had greater understanding of their obligations as a result. Even accounting for any lack of sophistication, however, Defendants' wholesale failure to implement any preservation measures means that they did not take reasonable steps to preserve the WeChat messages.

***3. Whether the Messages can be Restored or Replaced***

The third factor is whether the lost information can be restored or replaced through additional discovery. The Advisory Committee Notes to the 2015 amendments direct that this factor should be the "initial focus" of the inquiry. Fed. R. Civ. P. 37(e), 2015 Advisory Comm. Note.

Defendants do not argue that the lost WeChat messages can be recovered or restored through WeChat or through any forensic process. Defendants also have never contended that COT retains copies of those messages or that the messages are available from any other source. Instead, Defendants argue that the information can be restored because "[t]he WeChat communications with Central Ohio Tax Company did not constitute the original source or sole record of Defendants' payroll, timekeeping, or tip information." (ECF No. 51, PageID # 1011). According to Defendants, the information in the WeChat messages was taken from Defendants' system and remains available on the system to this day.

However, regardless of whether the underlying payroll, timekeeping, and tip information is available through other means, Defendants' messages to COT are apparently lost and unrecoverable. Neither the parties nor the Court can know with certainty what was in those messages, whether they contained additional relevant commentary beyond payroll data, and whether the payroll information Defendants transmitted to COT was identical to the records in Defendants' system. Accordingly, this factor is satisfied as well.

***4. Prejudice***

The final factor is whether Plaintiffs have been prejudiced by Defendants' failure to preserve the WeChat messages. Evaluating prejudice "necessarily includes an evaluation of the information's importance to the litigation." Fed. R. Civ. P. 37(e), 2015 Advisory Comm. Note; *see also Courser*, 831 F. App'x at 187-88. Notably, Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37(e), 2015 Advisory Comm. Note. Instead, judges have discretion in determining how to assess prejudice. *Id*.

By Defendants' own admission, the WeChat messages included semi-monthly payroll exports containing hours and tip figures. That information is central to Plaintiffs' claims in this FLSA action, in which they argue that Defendants operated an unlawful tip pool and that Plaintiffs were sometimes paid less than a minimum wage. Defendants nonetheless argue that Plaintiffs have not suffered prejudice because the underlying data remains extant on Seafood Shake's system. I reject that argument for the reasons discussed above. Moreover, Defendants have not actually produced the underlying data from their system. Instead, Defendants have consistently taken the position that Plaintiffs will need to inspect Defendants' system at their own expense and copy relevant information because the volume of relevant data is high and the burden on Defendants of producing the information would be too great. Defendants have not substantiated that burden or provided any information on the volume of relevant materials. However, given the alleged inability to recreate the missing data without substantial burden and expense, and the lack of certainty regarding whether the information on Defendants' system can completely replicate Defendants lost messages with COT, Plaintiffs have been prejudiced by Defendants' failure to preserve those messages.

### *5. Sanctions*

That leaves only the question of the appropriate sanction. Rule 37(e) grants judges broad discretion, and "[t]here is no all-purpose hierarchy of the severity of various measures; the severity of given measures must be calibrated in terms of their effect on the particular case." Fed. R. Civ. P. 37(e), 2015 Advisory Comm. Note.

Notably, "[n]othing in the rule limits the court's powers under Rule 16 and 26 to authorize additional discovery." Fed. R. Civ. P. 37(e), 2015 Advisory Comm. Note. Given Defendants' insistence that the missing payroll data is available—though as yet unproduced—on their system, I conclude that the appropriate sanction is to order Defendants to produce that data. Accordingly, within 14 days, Defendants shall produce—at their own expense and through their own effort—all relevant documents from their system (or any cloud-based system that Defendants use to track such information) regarding daily tip-out amounts, hours worked, sales figures, and pay for Ms. Hockey and each opt-in plaintiff for the relevant period. Defendants may not rely on any burden objection to avoid such production and may not require Plaintiffs to inspect Defendants' system and make their own copies of the information.

Plaintiffs also seek to recover their fees and costs. That request is granted. Defendants' failure to preserve relevant information has frustrated the progress of this litigation, as has their repeated insistence that Plaintiffs must bear the burden and expense of recreating the missing records. On this record, Plaintiffs have established that an award of fees and costs is warranted.

Plaintiffs submitted a fee statement along with their motion for sanctions. (ECF No. 43-9). However, Plaintiffs' fee statement does not include a complete breakdown of fees and costs for the briefing on Plaintiffs' motion for sanctions. In addition, Plaintiffs' fee request

includes time spent on other, unrelated discovery matters. For example, Plaintiffs seek to recover interpreter fees for Ms. Lin's December 2, 2025 deposition which, as Defendants correctly note, I already held that Plaintiffs must pay for. (*See* ECF non-document entry dated October 28, 2025).

Accordingly, Defendants shall resubmit their fee statement within seven (7) days of this Order. Plaintiffs shall limit their request to fees and costs incurred in: (1) seeking the WeChat messages from Defendants; (2) any attempts to obtain the WeChat messages from COT[3] or other sources; and (3) bringing and litigating the present motion for sanctions.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for sanctions is GRANTED IN PART and DENIED IN PART. Plaintiffs' motion is denied to the extent they seek an adverse inference under Rule 37(e)(2). Plaintiffs' motion is granted to the extent they seek sanctions under Rule 37(e)(1). Within 14 days of the date of this Order, Defendants shall produce all relevant documents and information from their computer system (or any cloud-based system that Defendants use) regarding daily tip-out amounts, hours worked, sales figures, and pay for Ms. Hockey and each opt-in plaintiff for the relevant period. Additionally, within seven (7) days of this Order, Plaintiffs may file a supplemental fee request detailing the reasonable fees and costs that Plaintiffs have incurred in seeking to obtain the missing documents and in litigating the present motion for sanctions.

**IT IS SO ORDERED.**

[3] Plaintiffs' motion seeks to recover fees for "costs of the third-party accountant subpoena." (ECF No. 43, PageID # 862). However, the only subpoena referenced in Plaintiffs' fee affidavit is a subpoena to Seafood Shake Easton. (ECF No. 43-9). It is therefore unclear whether Plaintiffs did, in fact, attempt to subpoena COT for the missing WeChat messages. If Plaintiffs issued a subpoena to COT, they may seek to recover their reasonable fees and expenses in doing so.

Dated: October 5, 2026

*<u>/s Jennifer Dowdell Armstrong</u>*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge